

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00313-CR

Frank James **HUGHES**,
The Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR7935
Honorable Joel Perez, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Irene Rios, Justice
Lori Massey Brissette, Justice
Adrian A. Spears II, Justice

Delivered and Filed: March 11, 2026

AFFIRMED

Appellant Frank James Hughes argues his right to a speedy trial was violated. We affirm.

### BACKGROUND

On October 14, 2021, Hughes was arrested for injury to a child causing serious bodily injury. He was initially indicted under trial cause number 2021-CR-11675 and remained in custody because he was unable to pay his bond. Subsequently, the State dismissed the indictment in trial cause number 2021-CR-11675 but had already reindicted Hughes on August 16, 2022, under trial

cause number 2022-CR-7935 on two counts of injury to a child causing serious bodily injury. Despite the trial court reducing Hughes's bond before trial, Hughes remained incarcerated.

After numerous trial resets and several continuances requested by both parties, Hughes's trial began February 6, 2024.[1] The day before trial, the trial court heard several motions, including a motion to set aside the indictment for violating Hughes's right to a speedy trial that the trial court denied. Following the presentation of the evidence to the bench, the trial court took the case under advisement; and, on April 15, 2024, found Hughes guilty of committing two counts of injury to a child causing serious bodily injury. On July 15, 2024, the trial court sentenced Hughes to serve two life sentences. Hughes appeals claiming his right to a speedy trial was violated, and thus his convictions should be reversed and the charges dismissed with prejudice.

### APPLICABLE LAW AND STANDARD OF REVIEW

Both the United States Constitution and Texas Constitution guarantee an accused the right to a speedy trial. *See* U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *see also State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021) (describing Texas Constitution as containing "the same guarantee" as U.S. Constitution); *Shaw v. State*, 117 S.W.3d 883, 888 (Tex. Crim. App. 2003) (stating that courts apply the same legal standard to state and federal constitutional speedy-trial challenges). The right to a speedy trial attaches once a person is either arrested or charged. *See Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Courts evaluate a speedy-trial claim under a four-factor test that considers the length of the delay, the reasons for the delay, the extent to which the accused asserted the right to a speedy trial, and any prejudice suffered by the accused due to the delay. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Lopez*, 631 S.W.3d at 113. If the defendant can make a threshold showing that the

---

[1] After the parties conducted voir dire on February 6, 2024, Hughes waived his right to a jury, and testimony began February 7, 2024.

interval between accusation and trial is "presumptively prejudicial," then a court must consider each of the remaining *Barker* factors and weigh them. *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). There is no set time element that triggers the *Barker* analysis, but the Texas Court of Criminal Appeals has held that a delay of eight months to a year or longer is sufficient to cross the threshold requiring a court to conduct a complete speedy-trial analysis. *Lopez*, 631 S.W.3d at 114. The accused bears the burden of showing that the length of delay is unreasonable enough to require a complete speedy-trial analysis. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014).

When the length of delay is sufficiently unreasonable to require a complete speedy-trial analysis, a court must assess the strength of each of the four factors and balance their relative weights considering the prosecution's and defendant's conduct. *Cantu*, 253 S.W.3d at 281. No single factor is necessary or sufficient on its own to support a finding that the accused's right to a speedy trial has been violated. *Id*. Because the four factors must be considered together, courts must engage "'in a difficult and sensitive balancing process' in each individual case." *Id*. (quoting *Barker*, 407 U.S. at 533).

"'Dismissal of the charging instrument with prejudice is mandated *only* upon a finding that an accused's Sixth Amendment speedy-trial right was actually violated.'" *State v. Gabaldon*, 727 S.W.3d 1, 16–17 (Tex. Crim. App. 2025) (quoting *Cantu*, 253 S.W.3d at 281) (emphasis added by *Gabaldon* court). "This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried." *Barker*, 407 U.S. at 522. Each case must be analyzed "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Cantu*, 253 S.W.3d at 281.

We apply a bifurcated standard of review to a trial court's ruling on a speedy-trial claim. *Id*. at 282. We review the factual components for an abuse of discretion and the legal components de novo. *Id*. Review of the individual *Barker* factors necessarily involves factual determinations and legal conclusions, but the balancing test overall is "a purely legal question." *Id*. As to the trial court's determination of factual issues, we view all the evidence in the light most favorable to the trial court's ruling. *Id*.

### ANALYSIS

*A. Length of Delay*

The first *Barker* factor is the length of delay. *Barker*, 407 U.S. at 530. The length of delay that provokes an inquiry into the other factors "is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31. "The delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex . . . charge." *Id*. at 531.

The length of delay between an accused's arrest or indictment and when he demands a speedy trial or is tried determines whether the time frame is presumptively unreasonable. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). As stated above, delay "approaching one year" is presumptively unreasonable so as "to trigger the *Barker* enquiry." *Balderas*, 517 S.W.3d at 768 (internal quotation marks omitted).

Under the original indictment, Hughes was arrested on October 14, 2021, and appointed counsel within days. While Hughes retained paid counsel on October 21, 2021, his retained counsel filed a motion to withdraw; and, on April 4, 2022, the trial court granted retained counsel's request to withdraw and reappointed Hughes's prior appointed counsel to represent him. Based on our review of the record, it appears the case was then reset in April 2022, June 2022, and September 2022. Hughes was reindicted on August 16, 2022.

At the October 3, 2022 trial setting, Hughes moved for a sixty-day continuance stating he had received a sizable amount of discovery and needed time to review it. Noting Hughes had received the discovery more than a month prior to the hearing, the trial court granted Hughes's continuance in part, resetting the case for the end of October 2022. Hughes's counsel then filed multiple motions on October 5, 2022, including a motion to set aside the indictment based on speedy-trial concerns. No hearings appear to have been requested for the motions at that time. The docket sheet, which is sparsely documented, reflects that the trial court then reset the case again on October 31, 2022, noting the defense needed time to review more discovery. On November 10, 2022, Hughes filed a pro se motion to dismiss his case based in part on failure to have a speedy trial. At the December 2022 trial setting, the trial was reset for January 27, 2023.

On January 27, 2023, the defense announced ready, but the State requested a continuance to coordinate its expert witnesses for trial. Hughes complained contending the State routinely requested resets and that the trial court had already warned the State to be ready for trial, an allegation the State refuted proclaiming discovery was the reason for most of the resets. For example, the defense requested another video copy of a witness's interrogation because it had poor audio quality, and the State provided a new video. The trial granted the continuance but stated the parties needed to quickly choose a trial date. However, the record reflects the case was reset again in February 2023 and May 2023, and several times thereafter.

Before the August 2023 trial setting, Hughes filed multiple pro se motions and petitions for writ of habeas corpus requesting his right to a speedy trial be granted, he be released from custody because of the delay in going to trial, or for the case to be dismissed because of the delay. Hughes also forwarded correspondence to the trial court requesting he be released because of the State's delay and claimed a right to appeal his denial of a speedy trial, although no hearings had

been requested and the trial court had not ruled on any of his pro se motions. Additionally, in the same month the case was set to go to trial, Hughes's counsel filed another motion for continuance to allow him to seek another expert after discovering a conflict with the current expert. The trial court granted the continuance and reset the case to November 3, 2023.

Prior to the November 2023 setting, Hughes continued to file pro se requests addressing his right to a speedy trial. However, Hughes's counsel filed an additional motion to continue the November 3, 2023 trial setting, this time to allow counsel to receive the recently hired expert's feedback on his review of the complainant's medical records. The trial court granted the motion and reset the case for January 12, 2024. On the day of trial in January and over Hughes's objection, the trial court granted the State's motion for continuance after the State claimed its expert could not be available to testify until early February.

The trial court reset the case to February 2, 2024, for a pretrial hearing, at which the State and Hughes both announced they were ready. On February 5, 2024, the trial court heard Hughes's pretrial motions, including his motion to set aside the indictment alleging his right to a speedy trial was violated. The trial court denied Hughes's speedy-trial motion, and trial began February 6, 2024. Following voir dire, Hughes waived his right to a jury trial, and the trial court proceeded with a bench trial on February 7, 2024, taking the case under advisement at the conclusion of the evidence before rendering its verdict. On April 15, 2024, the trial court found Hughes guilty of committing two counts of injury to a child causing serious bodily injury; and on July 15, 2024, the trial court sentenced Hughes to two life sentences.

The State concedes on appeal, and we agree, that the delay from arrest to trial was more than enough to trigger a complete *Barker* analysis. *See Lopez*, 631 S.W.3d at 114 (holding that a delay of eight months or more is presumptively prejudicial and triggers a speedy-trial analysis).

*B. Reasons for Delay*

"While the State has the burden of justifying the length of the delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280 (citing *Barker*, 407 U.S. at 531; *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)). When evaluating the reasons for the delay, "a court must accord different weights to different reasons, and it must ask "'whether the government or the criminal defendant is more to blame for the delay.'" *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017) (quoting *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)); *see also Zamorano*, 84 S.W.3d at 649 (providing that the reasons for the delay determine how heavily this factor weighs). Deliberate delays aimed at hampering the defense weigh heavily against the government, while negligence or overcrowded courts also weigh against the government, just less heavily. *See Barker*, 407 U.S. at 531; *State v. Munoz*, 991 S.W.2d 822 (Tex. Crim. App. 1999). On the other hand, valid reasons for the delay, including accommodating witnesses, should not be weighed against the government at all. *See Barker*, 407 U.S. at 531.

Delays attributable to the defense weigh against the defendant. *Hopper*, 520 S.W.3d at 924. "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Balderas*, 517 S.W.3d at 768 (quoting *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)).

Here, from the record on appeal, it is difficult to determine the reasons for several of the trial resets. The clerk's record fails to document all the trial resets, including whether they were agreed upon. However, during the hearing on Hughes's motion to set aside the indictment conducted the day before trial, when the trial court inquired into the reason for the delay, the State acknowledged the record was not very clear but explained that in addition to both parties

requesting continuances, many of the resets concerned discovery and witness issues and were agreed upon. *See Richardson v. State*, 631 S.W.3d 269, 274 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (explaining that "agreed resets are inconsistent with the assertion of a speedy trial right").

Furthermore, Hughes's counsel filed the first speedy-trial motion on October 5, 2022. Hughes filed several pro se speedy-trial motions afterwards. However, the record does not indicate that Hughes brought any of his motions to the trial court's attention to obtain a ruling until the day before the February 2024 trial setting. Thus, the delay from the date Hughes filed his first speedy-trial motion until February 5, 2024, is substantially attributable to Hughes. *See Crocker v. State*, 441 S.W.3d 306, 311 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (quoting *Guevara v. State*, 985 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (providing that a speedy-trial motion must be "'presented'" to the trial court and the movant "'must make the trial judge aware of the motion by calling the judge's attention to it in open court *and requesting a ruling thereon*'") (emphasis added by *Crocker* Court).

Moreover, just days before filing his first speedy-trial motion, Hughes sought and obtained a sixty-day continuance. And although in January of 2023 Hughes objected to the State's request for additional time, Hughes then filed two additional motions for continuance in August 2023 and November 2023. Not until January 2024, did Hughes unequivocally object to the State's request for more time. However, the State's request for time specifically concerned the availability of its physician expert. Consequently, the extended delay is significantly attributable to Hughes. *See Hopper*, 520 S.W.3d at 924; *see also Balderas*, 517 S.W.3d at 768 ("Delay caused by either the defendant or his counsel weighs against the defendant.").

While the State requested additional time in January 2023 and then in January 2024, the State's delays were based on the coordination of witnesses, including its testifying experts. On February 5, 2024, the day before trial, the trial court held a hearing on Hughes's first speedy-trial motion filed in October 2022. During the hearing, the State acknowledged that it could not specifically explain every delay between Hughes's arrest and trial but reasoned much of the delay was because of voluminous discovery, which we note included hundreds of pages of medical records, a high level of difficulty concerning the case, and problems coordinating the physician experts. Hence, the State's requests for continuances were either neutral or valid and do not weigh heavily or at all against the State. *See Munoz*, 991 S.W.2d at 822.

Therefore, the State is responsible for some of the delay; however, the State's requested continuances are attributable to the coordination of witnesses, including its physician expert. Delays for this reason are justified. *See id.* Also, nothing in the record suggests that the majority of the resets were not agreed upon, so either Hughes agreed to the delays or the reasons for the delays are considered neutral. *See Richardson*, 631 S.W.3d at 275; *see also Balderas*, 517 S.W.3d at 768. Hughes, on the other hand, filed four motions requesting the case be continued and failed to present any of his speedy-trial motions to the trial court prior to the day before trial. Therefore, we conclude that the reason-for-delay factor weighs against finding a violation of the speedy-trial right. *See Hopper*, 520 S.W.3d at 925; *Guevara*, 985 S.W.2d at 592.

C. *Assertion of the Right*

"The third *Barker* factor—the defendant's assertion of his right to a speedy trial—is entitled to strong evidentiary weight in determining whether the defendant has been deprived of that right." *Balderas*, 517 S.W.3d at 771. The accused bears the burden of proving he asserted the right. *Cantu*, 253 S.W.3d at 282–83. "A defendant has no duty to bring himself to trial;" he does

however have a responsibility to assert his right to a speedy trial. *Barker*; 407 U.S. at 527; *see Zamorano*, 84 S.W.3d at 651; *see also Henson v. State*, 407 S.W.3d 764, 768–69 (Tex. Crim. App. 2013) (holding speedy-trial right is subject to ordinary error-preservation rules). An accused's failure to timely assert his right to a speedy trial strongly indicates that he did not desire one. *Balderas*, 517 S.W.3d at 771. An accused who desires a speedy trial is more likely to assert this right the longer the trial is delayed. *Id*. Hence, prolonged inaction by the accused weighs more heavily against finding that the speedy-trial guarantee has been violated. *Id*.

Here, Hughes's counsel invoked Hughes's speedy-trial right on October 5, 2022—a year after Hughes was arrested but days after requesting a continuance on September 30, 2022—by filing a motion to dismiss the indictment because of the delay. Starting in November 2022 and while he was represented by counsel, Hughes began filing his various pro se motions to dismiss, motions for a speedy trial, petitions for writ of habeas corpus, and other correspondence with the trial court regarding his continued incarceration and denial of his right to a speedy trial. However, a defendant has no right to hybrid representation. *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007); *see also Jenkins v. State*, 592 S.W.3d 894, 902 n.47 (Tex. Crim. App. 2018) (citing to *Robinson* when reaffirming a defendant's lack of right to hybrid representation in a case regarding a pro se motion to quash an indictment). Therefore, a trial court is free to disregard any pro se motion presented by a defendant who is represented by counsel, who does not adopt or urge the pro se motion. *Robinson*, 240 S.W.3d at 922; *see also Tracy v. State*, 597 S.W.3d 502, 509 (Tex. Crim. App. 2020) (rejecting appellant's argument that death penalty cases require hybrid representation and holding that trial court did not err in disregarding pro se motions presented by appellant).

Based on our review of the record, none of Hughes's motions were set for hearing prior to his motion to set aside the indictment that the trial court considered the day before trial. Additionally, while some of Hughes's pro se motions for speedy trial requested a trial, Hughes's counsel's motion and several of Hughes's pro se filings sought dismissal of his case for alleged speedy-trial violations rather than a speedy trial. It is well-established that "[f]iling for dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Gabaldon*, 727 S.W.3d at 18 (quoting *Cantu*, 253 S.W.3d at 283).

Moreover, as explained above, the record is devoid of Hughes's objecting to the multiple resets in this case. And despite Hughes's objection to the State's request for more time at the January 27, 2023 trial setting, several months later Hughes filed two motions for continuance himself—in August 2023 and November 2023. Thus, the record shows that Hughes acquiesced to the very delay he now challenges, by repeatedly requesting or consenting to resets while filing speedy-trial motions, failing to bring them to the trial court's attention, and failing to object to the State's requests for continuance. *See Hopper*, 520 S.W.3d at 929.

### D. Prejudice Assessment

We assess prejudice in light of the defendant's interests that the speedy trial right is designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The last interest is the most serious because a defendant's inability to prepare an adequate defense skews the fairness of the entire system. *Id.* While a defendant shoulders the burden to make some showing of prejudice, "a showing of actual prejudice is not required." *Balderas*, 517 S.W.3d at 772; *cf. Gabaldon*, 727 S.W.3d at 19 ("[I]n in the absence of excessive

bad-faith or excessive negligent delay by the government, a defendant usually has to show specific prejudice to his defense.") (internal quotation and citations omitted). "Excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Balderas*, 517 S.W.3d at 772.

However, "delay is a two-edged sword[.]" *Gabaldon*, 727 S.W.3d at 19 (citation omitted). In addition to the impacts the delay can cause the defendant, the passage of time can also negatively impact or altogether prevent the State's ability to prove its case beyond a reasonable doubt. *See id.* (citation omitted). Thus, a presumption of prejudice may be "extenuated . . . by the defendant's acquiescence in the delay." *Id.* (internal quotation and citations omitted).

Hughes urged that he suffered from oppressive pretrial incarceration because he had been in custody since his arrest in October 2021. Hughes claimed that because he was incarcerated and could not pay his bond, he was not able to assist his defense in gathering evidence. At no time, however, has Hughes alluded to what type of evidence he would have discovered, what it may have shown, and how it negatively impacted his ability to defend himself. Additionally, Hughes's counsel provided no explanation of how Hughes's pretrial incarceration prejudiced his defense of Hughes. Counsel's representations and defendant's unsupported assertions are generally not competent evidence; and, even assuming they were, they are conclusory in nature.

To add, Hughes's assertions fail to demonstrate anxiety or concern beyond that which would be expected for someone charged with a serious crime. *See id.* at 19 (citing *Shaw*, 117 S.W.3d at 890); *see also State v. Beck*, 695 S.W.3d 729, 748 (Tex. App.—Houston [1st Dist.] 2024, no pet.); *State v. Moreno*, 651 S.W.3d 399, 415 (Tex. App.—Houston [1st Dist.] 2022, no pet.). Moreover, on this record, any presumptive prejudice due to the passage of time is arguably extenuated by Hughes's acquiescence in the delay resulting from agreed resets and his requests for

continuances. *See Hopper*, 520 S.W.3d at 929; *see also Balderas*, 517 S.W.3d at 773 (concluding that any prejudice to defendant was extenuated by his role in requesting the delay). As mentioned above, Hughes filed his first motion to set aside the indictment because of speedy-trial violations in October 2022, but he did not present the motion to the trial court and obtain a ruling until the day before trial on February 5, 2024.

While we acknowledge that Hughes suffered some prejudice from his pretrial incarceration, such prejudice standing alone is not enough to support his claim that his speedy trial rights were violated. *See Munoz*, 991 S.W.2d at 829 (seventeen-month pretrial incarceration was "minimal" prejudice); *State v. Conatser*, 645 S.W.3d 925, 931 (Tex. App.—Dallas 2022, no pet.) (two years on bond awaiting trial without more is no showing of "significant prejudice" making this factor "weigh heavily" against defendant); *Meyer v. State*, 27 S.W.3d 644, 650–51 (Tex. App.—Waco 2000, pet. ref'd), *abrogated on other grounds by Robinson*, 240 S.W.3d at 922 (twenty-three-month pretrial incarceration and resultant anxiety alone is "minimal" showing of prejudice). Beyond the prejudice to be expected from the passage of time before Hughes was tried, Hughes did not make any particularized showing of how the delay potentially prejudiced his defense. *See Gabaldon*, 727 S.W.3d at 21–22; *Balderas*, 517 S.W.3d at 772.

*E. Balancing of Factors*

Based on the record before us, Hughes contradicted his own demands for a speedy trial, quietly acquiescing to the delay. The record also establishes that most of the delay could not be attributed to the State as its delays were justified or were considered neutral to both parties. We conclude that the weight of the four factors, balanced together, goes against finding a violation of Hughes's right to a speedy trial. *See Barker*, 407 U.S. at 5034.

Accordingly, we overrule Hughes's sole appellate issue.

## CONCLUSION

Because we overrule Hughes's speedy-trial issue, we affirm the trial court's final judgments of conviction.

Irene Rios, Justice

DO NOT PUBLISH